# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YENG XIONG, | Case No.: 1:10-cv-00120-OWW-JLT HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RE: RESPONDENT'S MOTION TO DISMISS |
| v. | THE PETITION (Doc. 15) |
| D. G. ADAMS, | ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN TWENTY DAYS |
| Respondent. | |

### **PROCEDURAL HISTORY**

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The instant federal petition for writ of habeas corpus was filed on January 21, 2010.[1] On June 14, 2010, Respondent filed a motion to dismiss the petition as untimely.

---

[1] In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), *amended* May 23, 2001, *vacated and remanded on other grounds sub nom*. Carey v. Saffold, 536 U.S. 214, 226 (2002). The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th cir. 2003). Accordingly, for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date of signing of the petition (or the date of signing of the proof of service if no signature

1

(Doc. 15).  On July 16, 2010, Petitioner filed his opposition.  (Doc. 16).  On July 27, 2010, Respondent filed a reply.  (Doc. 17).

**DISCUSSION**

A.  Procedural Grounds for Motion to Dismiss

As mentioned, Respondent has filed a Motion to Dismiss the petition as being filed outside the one year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1).  Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ."  Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).  Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. § 2244(d)(1)'s one year limitation period and failure to state a cognizable habeas claim.  Because Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

---

appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation.  Petitioner signed the instant petition on January 21, 2010. (Doc. 1, p. 12).

1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The instant petition was filed on January 21, 2010, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitations period begins running on the date that the petitioner's direct review became final, pursuant to subsection (d)(1)(A). In a situation such as this, however, where the petitioner is challenging a prison disciplinary action, the Ninth Circuit has held that direct review is concluded and the statute of limitations commences, pursuant to subsection (d)(1)(D), when the final administrative appeal is denied. <u>Redd v. McGrath</u>, 343 F.3d 1077, 1079 (9th Cir. 2003)(holding that the Board of Prison Term's denial of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that triggered the commencement of the limitations period); <u>Shelby v. Bartlett</u>, 391 F.3d 1061, 1066 (9th cir. 2004)(holding that the statute of limitation does not begin to

3

run until a petitioner's administrative appeal has been denied).

In this case, Respondent has submitted documents establishing that Petitioner is serving an indeterminate life sentence with the possibility of parole plus a one-year enhancement based on his 1992 conviction in the Merced County Superior Court for attempted murder. (Doc. 15, Ex. 1). The petition alleges that Petitioner was found to have violated prison rules by battering another inmate following a prison disciplinary hearing conducted on October 20, 2007. (Doc. 1, p. 27). Petitioner was assessed the loss of 360 days of credits as a result. (Id., pp. 36-37). When Petitioner attempted to exhaust his administrative remedies, his first level appeal was rejected for non-compliance with procedures. (Id., p. 24). His appeal to the final level of review was rejected on March 11, 2008, for failure to complete a second-level review. (Id.).

Therefore, the limitations period commenced on March 12, 2008, the day after Petitioner was informed that his final administrative appeal had been denied. Under 28 U.S.C. § 2244(d)(1)(D), Petitioner had one year from that day, or until March 11, 2009, absent applicable tolling, within which to file his federal petition for writ of habeas corpus. As mentioned, Petitioner did not file his federal petition until January 21, 2010, over ten months *after* the limitations period had expired. Absent any applicable tolling, therefore, the petition is untimely.

C. Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361 (2000). An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations omitted); see Evans v. Chavis, 546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold, 536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006

(9th Cir. 1999).

Nevertheless, there are circumstances and periods of time when no statutory tolling is allowed.  For example, no statutory tolling is allowed for the period of time between finality of an appeal and the filing of an application for post-conviction or other collateral review in state court, because no state court application is "pending" during that time.  Nino, 183 F.3d at 1006-1007.  Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of a federal petition.  Id. at 1007.   In addition, the limitation period is not tolled during the time that a federal habeas petition is pending.  Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002).  Further, a petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001).  Finally, a petitioner is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims.  See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

Respondent's documents establish that Petitioner filed the following state habeas corpus petitions challenging the disciplinary decision: (1) filed in the Solano County Superior Court on June 3, 2008, and denied on August 11, 2008 (Doc. 15, Ex. 3, 4); (2) filed in the California Court of Appeal on August 26, 2008, and denied on September 17, 2008 (Doc. 15, Ex. 5, 6); and (3) filed in the California Supreme Court on December 9, 2008, and denied on January 21, 2009.  (Doc. 15, Ex. 7, 8).

Accordingly, the one-year statute would have commenced on March 11, 2008 and would have continued to run until Petitioner filed his first state habeas petition on June 3, 2008, a period of 84 days.  At that point, Petitioner would have had 281 days remaining on his 365-day limitation period.  Assuming, without deciding, that all three of Petitioner's state habeas petitions were "properly filed" within the meaning of the AEDPA and entitled Petitioner to statutory tolling for the pendency of those petitions and the intervals separating them, the one-year period would have commenced again the day following the California Supreme Court's denial of Petitioner's third

habeas petition, i.e., on January 22, 2009. Petitioner would then have had 281 days within which to file his federal petition. As mentioned, he did not file the instant petition until January 21, 2010. Therefore, the one-year period continued to run unabated for 281 days until it expired on October 30, 2009.

In his opposition, Petitioner contends that the starting date for the one-year period is ninety days after the denial of his appeal by the California Supreme Court. (Doc. 16, p. 2). According to Petitioner's reasoning, therefore, he had one year plus ninety days after the California Supreme Court denied his third habeas petition on January 21, 2009 within which to file his federal petition. Petitioner is mistaken.

As mentioned previously, the one-year period normally commences ninety days after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. 2244(d)(1)(A); Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998). However, Petitioner is not challenging his original conviction; therefore, subsection (d)(1)(A) is not the starting date for the one-year period. Rather, as mentioned, when a challenge to a prison disciplinary hearing is involved, the starting date is governed by subsection (d)(1)(D), i.e., "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." See Shelby, 391 F.3d at 1066. Thus, the one-year period commenced and expired as outlined above.[2]

Petitioner also contends that his administrative appeal was not final when it was rejected at the director's level of review because Petitioner could have sought further review by the Board of Parole Hearings ("BPH") within fifteen days. (Doc. 16, pp. 2-3). However, as Respondent correctly points out, that aspect of a prisoner's administrative appeal was repealed in 2004. Cal. Code Regs,

---

[2] In Redd, the Ninth Circuit noted with sympathy the difficulty a California petitioner faces in challenging a prison administrative decision, which, in this State, can only be exhausted through the state habeas process: "We are sympathetic to the concern that under our construction of § 2244(d)(1)(D), the statute of limitations began running at a time when [petitioner] could not have presented his claim in federal court because the claim had not yet been exhausted." Redd, 343 F.3d at 1083. Petitioner here was in a similar situation. However, nothing in either the federal statute or the Ninth Circuit's case law permits this Court to vary the date on which the one-year period commenced merely in order to accommodate Petitioner's difficult plight.

6

1  tit. 15, §§ 2050-2057, 3084.7.  Hence, the director's level of review is now the final decision in the
2  prison administrative appeal process.  In any event, even assuming Petitioner was correct, the
3  additional fifteen days of tolling would not make the instant petition timely under the AEDPA.
4  Therefore, unless Petitioner is entitled to equitable tolling, the petition should be dismissed as
5  untimely.
6       D.  Equitable Tolling
7  The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to
8  equitable tolling in appropriate cases.  See Holland v. Florida, __U.S.__, 130 S.Ct. 2549, 2561
9  (2010); Calderon v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997).  The limitation
10 period is subject to equitable tolling when "extraordinary circumstances beyond a prisoner's control
11 make it impossible to file the petition on time."  Shannon v. Newland, 410 F. 3d 1083, 1089-1090
12 (9th Cir. 2005)(internal quotation marks and citations omitted).  "When external forces, rather than a
13 petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the
14 statute of limitations may be appropriate."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).
15 "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1)
16 that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in
17 his way."  Holland, 2010 WL 2346549 at *12; Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct.
18 1807 (2005).  "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest
19 the exceptions swallow the rule."  Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation
20 omitted).  As a consequence, "equitable tolling is unavailable in most cases."  Miles, 187 F. 3d at
21 1107.
22 Here, Petitioner has made no express claim of entitlement to equitable tolling and, based on
23 the record now before the Court, the Court sees no basis for such a claim.  However, in his
24 opposition to the motion to dismiss, Petitioner implies that period of his confinement in the Security
25 Housing Unit ("SHU") should be tolled, thus entitling Petitioner to tolling between the time when
26 his administrative appeal was denied and when his filed his first state habeas petition, a period of 84
27 days.  (Doc. 16, p. 3).
28 As mentioned, equitable tolling is only allowed in those rare circumstances when

extraordinary circumstances beyond a petitioner's control prevented him from filing his federal petition even though the petitioner had been diligently pursuing his rights.  Here, Petitioner's has not presented any evidence that his SHU confinement either constituted an extraordinary circumstance or, if it were such an extraordinary circumstance, that it prevented him from timely filing his petition. Petitioner has neither alleged nor proven the dates upon which he was confined in the SHU, nor has he presented any credible evidence that confinement in the SHU prevented him from preparing and filing either his state habeas petitions or the instant petition.  Indeed, it appears that Petitioner was able to pursue some or all of his state habeas remedies while confined to the SHU.  Moreover, in the final analysis, it is not the 84-day interval between the denial of his last administrative appeal and the filing of the first state habeas petition that is fatal to Petitioner's claims.  Rather, it is the 365-day delay between the California Supreme Court's denial of his last state petition and the filing of the instant petition that has given rise to the timeliness issue.  Petitioner does not contend that any or all of this 365-day delay should be tolled on equitable grounds.  Accordingly, the petition is untimely and should be dismissed.

      E.  <u>Failure To State A Cognizable Federal Habeas Claim</u>.

      Respondent next contends that the petition should be dismissed for failure to state a cognizable habeas claim.  Respondent argues that because Petitioner is not raising a claim that would affect the fact or duration of his confinement, no habeas jurisdiction exists.  The Court agrees.

      A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a).  A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement.  <u>Badea v. Cox</u>, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 485 (1973); <u>Hill v. McDonough</u>, 547 U.S. 573, 579, 128 S.Ct. 2096 (2006)(challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.   In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement.  <u>McCarthy v. Bronson</u>, 500 U.S. 136, 141-42 (1991); <u>Preiser</u>, 411 U.S. at 499; <u>Badea</u>, 931 F.2d at 574; Advisory Committee Notes to Rule 1 of the Rules

1  Governing Section 2254 Cases.  While the United States Supreme Court has not addressed whether a

2  challenge to a condition of confinement may be brought in habeas corpus, see Docken v. Chase, 393

3  F.3d 1024, 1028 (9th Cir. 2004), the Ninth Circuit has held that "habeas jurisdiction is absent, and a §

4  1983 action proper, where a successful challenge to a prison condition will *not necessarily* shorten

5  the prisoner's sentence."  Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)(emphasis supplied).

6       As mentioned previously Petitioner was sentenced on the attempted murder conviction to an

7  indeterminate term of life with the possibility of parole.   In In re Dannenberg, 34 Cal.4th 1061

8  (2005), the California Supreme Court described the evolution of California's differing treatment of

9  inmates sentenced pursuant to the determinate sentencing law ("DSL") and those sentenced under

10  the indeterminate sentencing law ("ISL") as follows:

> For decades before 1977, California employed an "indeterminate" sentencing system for felonies.  The court imposed a statutory sentence expressed as a range between a minimum and maximum period of confinement–often life imprisonment–the offender must serve.  An inmate's actual period of incarceration within this range was under the exclusive control of the paroleauthority...During most of this period, parole dates were not set, and prisoners had no idea when their confinement would end, until the moment the parol authority decided they were ready for release.
>
> The DLS, adopted in 1976, largely abandoned this system....
>
> Under the DSL, most felonies are now subject, in the alternative, to three precise terms of years...The court selects one of these alternatives (the lower, middle, or upper term) when imposing sentence...The offender must serve this entire term, less applicable sentence credits, within prison walls, but must then be released for a further period of supervised parole....
>
> However, certain serious offenders, including "noncapital" murderers (i.e., those murderers not punishable by death or life without parole), remain subject to indeterminate sentences.  These indeterminate sentencees may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement....

21  In re Dannenberg, 34 Cal.4th at 1077-1080 (citations omitted).

22       Effective January 1, 1983, the California legislature added new § 2933 to the state Penal

23  Code, which eliminated the prior credit-earning system and instituted a new system of "work-time"

24  credits for performance in work assignments and educational programs up to a maximum of one day

25  reduction in term for each day of performance.  70 Ops. Cal. Atty. Gen. 49 (1987).  However, § 2933

26  applies only to persons sentenced under Penal Code §1170.  Persons convicted under § 1170 are

27  those convicted of an offense for which the specified sentence is one of three time periods of

28  imprisonment in state prison.  Cal. Pen. Code § 1168.  Accordingly, since Petitioner was not

9

sentenced under § 1170, he is not entitled to the normal work-time credits under § 2933 that are awarded to inmates serving determinate sentences.

Instead, Petitioner's credit-earning is governed by state regulations. Section 2290(a) of Title 15 provides as follows:

> "Life prisoners may earn post-conviction credit for each year spent in state prison. Post-conviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, post-conviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may post-conviction credit advance a release date earlier than the minimum eligible parole date."[3]

The suggested amount of post-conviction credit is "4 months for each year served since the date the life term started." Cal.Code.Regs., tit. 15, § 2290(c). The BPH may grant more or less than four months depending on how much time the inmate's "performance, participation or behavior" warrants. Id. [4]

In order, however, to fully appreciate the limitations of Petitioner's credit-earning capacity as a life prisoner, an explanation of how California's parole system for life prisoners interacts with a life prisoner's credit-earning potential is necessary. A life prisoner's "Minimum Eligible Parole Date," or "MEPD," is the "earliest date on which an Indeterminate Sentence Law or life prisoner may be legally released on parole." See Cal. Code Regs., titl. 15, § 3000; see also Cal. Code Regs., tit. 15, § 2000(b)(67). The CDCR determines the MEPD. See Cal. Code Regs., tit. 15, § 2400. However, "[t]he length of time a prisoner must serve prior to actual release on parole is determined by the [BPH]." Id.

California law provides that, one year prior to a prisoner's MEPD, a BPH panel shall meet

---

[3] Title 15 of the Code of California Regulations § 2000(b)(3) defines a "life prisoner" as "a prisoner serving a sentence of life with the possibility of parole." Life sentences may be imposed for, inter alia, attempted pre-meditated murder. Cal. Code Regs., tit. 15, § 2000(b)(3)(O). Here, Petitioner was sentenced to a life term for attempted pre-meditated murder. (Doc. 15, Ex. 1). Accordingly, he falls within the provisions of this regulation vis-a-vis his credit-earning ability.

[4] Although not critical to the Court's analysis, it bears mentioning that the one-year sentence enhancement imposed at sentencing would be subject to § 2933's credit-earning potential because it is a determinate sentence. See Cal. Pen. Code 1170. Under California law, Petitioner would first serve the one-year determinate term on that enhancement before commencing to serve his indeterminate life term. Cal. Pen. Code § 669; In re Monigold, 139 Cal.App.3d 485, 488, n. 2 (1983).

10

with the prisoner and shall set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(a).  Thus, the prisoner's MEPD is the basis for the timing of the initial suitability hearing.

Following a parole denial, the BPH "shall hear each case annually thereafter," except that the BPH may schedule a subsequent hearing up to five years "after any hearing at which parole is denied" if the prisoner has been convicted of murder and the BPH finds "that it is not reasonable to expect that parole would be granted at a hearing during the following years and states the bases for the finding in writing."  Cal. Penal Code § 3041.5(b)(2).

Following a finding of parole suitability for an inmate convicted of a murder committed on or after November 8, 1978, the BPH sets a base term "established solely on the gravity of the base crime, taking into account all of the circumstances of that crime."  Cal. Code Regs., tit. 15, § 2403(a).  The BPH sets a base term by taking into account the "matrix" of suggested base terms, circumstances in aggravation and mitigation, and adjustments for enhancements or other offenses.  See Cal. Code Regs., tit. 15, § 2403-2411.  However, the BPH may impose a base term other than one provided in the matrix "if justified by the particular facts of the individual case...." Id.  Once a base term is set, the BPH may consider awarding post-conviction credit to reduce the base term, up to four months for each year served, depending on the prisoner's performance, participation, and behavior while in prison.  See Cal. Code Regs., tit. 15, § 2400-2410.

California Penal Code § 190(a) mandates the application of good behavior credits by the CDCR against the minimum term for first degree murder, i.e., twenty-five years, that is imposed by statute for purposes of establishing the MEPD.  In re Dayan, 231 Cal.App.3d 184, 188 (1991).  However, nothing in the statute requires the BPH, or CDCR, to reapply those same credits to the actual term it eventually sets for Petitioner's sentence if, and when, it determines that Petitioner is eligible for parole.  Id.; see also Cal. Code Regs., tit. 15, § 2400 ("The [Department of Correction and Rehabilitation's] decisions pursuant to Penal Code §§ 2930 et seq. do not affect the [BPH's]

11

decision concerning post-conviction credit pursuant to these rules."). Thus, in theory, if a prisoner were determined to be parole eligible at the earliest possible time, credits might be of some use in actually reducing the amount of time a prisoner served before his initial parole suitability hearing was set. See People v. Rowland, 134 Cal.App.3d 1, 13-14 (1982). However, the question of Petitioner's actual release on parole will be determined only by the BPH, and no matter how much time Petitioner has served, he will not be released until he has been found suitable for parole. Cal. Pen. Code § 3041(b); Cal.Code Regs., tit. 15, § 2281(a).

Put simply, the credits that Petitioner is statutorily entitled to earn as a life prisoner can have no direct impact upon the amount of time Petitioner must actually serve, unless and until the BPH determines that he is suitable for parole and orders his release, if that time ever comes. Such credits can only impact the establishment of the MEPD for purposes of scheduling a parole suitability hearing date. Here, as Respondent correctly observes, as of 2007, when the prison disciplinary hearing at issue was conducted, Petitioner had long ago passed his MEPD of August 6, 1999. (Doc. 15, Ex. 2, pp. 1-2). Indeed, by 2007, Petitioner had already had three prior parole suitability hearings. (Id.). Accordingly, the fact that Petitioner was assessed a 360-day credit loss in 2007 would not have had any appreciable impact on his MEPD eight years earlier. Nor would it have any effect at all on when, if ever, the BPH finally decides that Petitioner is suitable for release on parole and actually sets a parole release date.

As the Ninth Circuit has indicated, "habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." Ramirez, 334 F.3d at 858. Here, it is patent that the credits Petitioner lost in his 2007 disciplinary hearing will not "necessarily shorten" his sentence. Thus, the Court cannot base its habeas jurisdiction upon a credit-earning system that has only a theoretical impact on the duration of Petitioner's sentence.

Accordingly, as an additional basis for dismissal, the Court recommends that it lacks jurisdiction to consider this petition because the claims do not challenge the legality or duration of Petitioner's confinement.

///

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss (Doc. 15), be GRANTED and the habeas corpus petition be DISMISSED for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period and for failure to raise a cognizable habeas claim.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 3, 2010**                         /s/ **Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE